**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| ERNEST HUNKELE, | ) | |
| | ) | Civil Action No. 11-178 |
| Petitioner, | ) | |
| | ) | |
| v. | ) | District Judge Terrence F. McVerry |
| | ) | |
| JACK KERESTES, Superintendent; THE | ) | Magistrate Judge Cynthia Reed Eddy |
| DISTRICT ATTORNEY OF | ) | |
| ALLEGHENY COUNTY; and the | ) | |
| ATTORNEY GENERAL FOR THE | ) | |
| STATE OF PENNSYLVANIA, | ) | |
| | ) | |
| Respondents. | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

### I.      RECOMMENDATION

It is respectfully recommended that the Petition for Writ of Habeas Corpus be denied and that

a certificate of appealability be denied.

### II.      REPORT

Petitioner, Ernest Hunkele, a state prisoner incarcerated at the State Correctional Institution at

Mahanoy, located in Frackville, Pennsylvania has petitioned for a writ of habeas corpus pursuant to

28 U.S.C. § 2254 in connection with his convictions for Murder in the First Degree and related

charges.  For the reasons that follow, the Petition should be denied.

#### A. Relevant Factual and Procedural History

On direct appeal, the Superior Court set forth the following relevant facts.

Hunkele was charged was charged with Criminal Homicide, 18 Pa.C.S.A. §
2501, Robbery, 18 Pa.C.S .A. § 3701, and Violation of the Uniform Firearms Act:

Firearms not to be Carried Without a License, 18 Pa.C.S.A. § 6106. These charges were filed in connection with a robbery occurring on February 10, 1998, in McKeesport, in which the owner of Dave and Char's Bar, Dave Weimer, was shot and killed. Following the shooting, a man identified as Joseph Gonzales was at a McKeesport hospital being treated for a gunshot wound to his neck. Gonzales indicated to police that he had been robbed and shot by two black males. A subsequent search of Gonzales' apartment, which he shared with Hunkele, revealed bloody clothing and ammunition matching that recovered from the victim. Thereafter, Gonzales gave a taped statement implicating himself and Hunkele in the robbery and shooting. He testified consistent with his statement at trial.

According to Gonzales, at approximately 1:00 a.m., he and Hunkele went into the Bar. Hunkele was holding a gun. While Hunkele pointed the gun at Weimer, Gonzales went for the cash register. Weimer fired his gun and hit Gonzales in the neck. More shots were fired and both Gonzales and Hunkele left the bar. Upon returning to their apartment, Hunkele told Gonzales that he had thrown the gun in some weeds and stated "I think I killed him." The victim died of two fatal gunshot wounds, one to the right upper chest and one to the right upper abdomen.

On September 26, 2000, the jury convicted Hunkele of Murder of the First Degree, Robbery, and Violation of the Uniform Firearms Act: Firearms not to be Carried without a License. Hunkele filed a post-sentence motion on November 27, 2000, and supplemental post-sentence motions on February 28, 2001. The trial court denied these motions on March 15. 2001. Hunkele timely filed his notice of appeal on March 21, 2001.

Commw. Ex. 5, ECF No. 11-3, pp. 1-2. On December 21, 2002, the Superior Court affirmed the judgment of the trial court (Commw. Ex. 5, ECF No. 11-3). Petitioner filed a Petition for Allowance of Appeal, which was denied by the Supreme Court of Pennsylvania on August 5, 2003.

On June 16, 2004, Petitioner filed a petition for relief under the Pennsylvania Post Conviction Relief Act (PCRA), 42 Pa. Cons. Stat. § 9542. On April 26, 2007, the PCRA Court denied Petitioner's PCRA Petition. Petitioner filed a timely Notice of Appeal and on December 24, 2009, the Superior Court of Pennsylvania affirmed the Trial Court's determination denying Petitioner

PCRA relief (Commw. Ex. 11, ECF No. 18-8). Petitioner filed a Petition for Allowance of Appeal, which was denied by the Supreme Court of Pennsylvania on October 15, 2010.

Petitioner filed his Petition for a Writ of Habeas Corpus with this Court on February 9, 2011 wherein he raises the following claims.

1.  The trial court erred, violating petitioner's constitutional rights, when it ruled that trial counsel violated Batson v. Kentucky.

2.  Ineffective assistance of trial counsel for failure to object to or request a curative instruction and/or a mistrial based on the prosecutor's closing argument remarks regarding a defense witness.

3.  The trial court erred, violating petitioner's constitutional rights, when it allowed non-expert law enforcement testimony in contradiction to its pre-trial ruling and appellate counsel was ineffective for failing to raise this issue on direct appeal.

Petitioner presented his claims in a timely manner to the Pennsylvania Courts in his direct appeal and PCRA proceedings.

## B. Standard of Review

In describing the role of federal habeas corpus proceedings, the Supreme Court of the United States, in Barefoot v. Estelle, 463 U.S. 880, 887 (1983), noted:

> [I]t must be remembered that direct appeal is the primary avenue for review of a conviction or sentence.... The role of federal habeas proceedings, while important in assuring that constitutional rights are observed, is secondary and limited. Federal courts are not forums in which to relitigate state trials.

In 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104-132, 110 Stat. 1214, April 24, 1996, (AEDPA), which further "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to

ensure that state-court convictions are given effect to the extent possible under law."  Bell v. Cone,

535 U.S. 685, 693 (2002).

Amended Section 2254 of the federal habeas corpus statute provides the standard of review

for federal court review of state court criminal determinations and provides, in relevant part, as

follows:

> (d)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding.

28 U.S.C.§ 2254(d).

"Clearly established Federal law" should be determined as of the date of the relevant

state-court decision and is limited to the record that was before the state court that adjudicated the

claim on the merits.  Greene v. Fisher, ___ U.S. ___, 132 S.Ct. 38 (2011); Cullen v. Pinholster, 563

U.S. ——, 131 S.Ct. 1388, 1398 (2011).  A state-court decision is "contrary to" clearly established

federal law if the state court (1) contradicts the governing law set forth in Supreme Court cases or (2)

confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court

and nevertheless arrives at a different result.  Williams v. Taylor, 529 U.S. 362, 405-06 (2000).  Few

state court decisions will be "contrary to" Supreme Court precedent.

The federal habeas court more often must determine whether the state court adjudication was an "unreasonable application" of Supreme Court precedent. A state-court decision 'involves an unreasonable application" of clearly established federal law if the state court (1) identifies the correct governing legal rule from the Supreme Court's cases but unreasonably applies it to the facts of the particular case; or (2) unreasonably extends a legal principle from Supreme Court precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply. Williams, 529 U.S. at 407. "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington v. Richter, 562 U.S. ——, ——,131 S.Ct. 770, 786 (2011) (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)). Accordingly, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Harrington, 131 S.Ct. at 786–87.

A recent decision of the Supreme Court illustrates the deference that the federal courts must accord to state court decisions. In Renico v. Lett, ___ U.S. ___, 130 S.Ct. 1855 (May 3, 2010), the Supreme Court reviewed the Court of Appeals for the Sixth Circuit's grant of a writ of habeas corpus to a defendant who was retried for murder following the trial judge's grant of a mistrial after the jury had deliberated for at least four hours following a relatively short, and far from complex, trial. The Michigan Supreme Court had concluded there was no violation of the Double Jeopardy Clause because the trial court exercised its sound discretion. The federal district court granted a writ of

habeas corpus and the Sixth Circuit affirmed, both concluding that the trial court's declaration of a mistrial constituted an abuse of discretion because there was no manifest necessity. The Supreme Court reversed.

> It is important at the outset to define the question before us. That question is not whether the trial judge should have declared a mistrial. It is not even whether it was an abuse of discretion for her to have done so-the applicable standard on direct review. The question under AEDPA is instead whether the determination of the Michigan Supreme Court that there was no abuse of discretion was "an unreasonable application of ... clearly established Federal law." § 2254(d)(1).

Lett, 130 S.Ct. at 1862. The Supreme Court further instructed:

> It is not necessary for us to decide whether the Michigan Supreme Court's decision - or, for that matter, the trial judge's declaration of a mistrial - was right or wrong. The latter question, in particular, is a close one. As Lett points out, at a hearing before the Michigan Court of Appeals, the state prosecutor expressed the view that the judge had in fact erred in dismissing the jury and declaring a mistrial. The Michigan Supreme Court declined to accept this confession of error, People v. Lett, 463 Mich. 939, 620 N.W.2d 855 (2000), and in any event - for the reasons we have explained - **whether the trial judge was right or wrong is not the pertinent question under AEDPA.**

Id. at 1865, n. 3 (emphasis added).[1] See also Schriro v. Landrigan, 550 U.S. 465, 473 (2007); Lockyer v. Andrade, 538 U.S. 63, 75 (2003) (it is "not enough that a federal habeas court, in its independent review of the legal question, is left with a 'firm conviction' that the state court was 'erroneous.' ").

Moreover, a federal court must accord a presumption of correctness to a state court's factual findings, which a petitioner can rebut only by clear and convincing evidence. 28 U.S.C. § 2254(e).

---

1. See also Harris v. Ricci, 607 F.3d 92, 99 (3d Cir. 2010) (explaining and applying Lett).

Where a state court's factual findings are not made explicit, a federal court's "duty is to begin with the [state] court's legal conclusion and reason backward to the factual premises that, as a matter of reason and logic, must have undergirded it." Campbell v. Vaughn, 209 F.3d 280, 289 (3d Cir. 2000). In determining what implicit factual findings a state court made in reaching a conclusion, a federal court must infer that the state court applied federal law correctly. *Id*. (citing Marshall v. Lonberger, 459 U.S. 422, 433 (1982)).

1.    Batson Claim

In his first claim Petitioner asserts that he was denied his right to a fair and impartial trial, equal protection and due process rights under the United States Constitution when the trial court ruled that defense counsel violated Batson v. Kentucky and ordered a prospective juror to remain on the jury panel.  In this regard, in Batson v. Kentucky, 476 U.S. 79 (1986); the Supreme Court determined that the Equal Protection Clause forbid the prosecution from engaging in purposeful discrimination on the basis of race in exercising peremptory challenges.  The Supreme Court extended this prohibition to forbid defense counsel from engaging in purposeful discrimination in exercising peremptory challenges in Georgia v. McCollum, 505 U.S. 42 (1992).  The prosecution's objection to the defendant's discriminatory use of peremptory challenges is sometimes referred to as "reverse Batson motion" or "reverse Batson challenge." Coombs v. Diguglielmo, 616 F.3d 255, 257 (3d Cir. 2010); Overton v. Newton, 295 F.3d 270, 273 (2d Cir. 2002).  The prohibition against exercising peremptory challenges on the basis of race applies whether the peremptory challenge is against a white or black prospective juror.  In addition, a defendant's claim that the prosecution engaged in purposeful discrimination on the basis of race in the exercise of peremptory challenges is

not precluded by the fact that the defendant's race differs from that of the excluded venirepersons. Powers v. Ohio, 499 U.S. 400, 402-09 (1991).

In Batson, the United States Supreme Court established a three-step burden-shifting framework for determining whether a peremptory challenge is race-based. First, the opponent of the peremptory challenge must establish a *prima facie* case showing that the challenge is racially discriminatory. Batson, 476 U.S. at 93-97. To establish a *prima facie* case, the opponent of a challenge must establish that *voir dire* supports an inference of discriminatory purpose in the exclusion of a juror through a race-based peremptory challenge. Powers v. Ohio, 499 U.S. at 411-16. Second, if a *prima facie* showing is made, the burden of production shifts to the proponent of the peremptory challenge to come forward with a race-neutral explanation for removing the juror in question. Purkett v. Elem, 514 U.S. 765, 767 (1995); Batson, 476 U.S. at 97. If a race-neutral explanation is tendered, the trial court must then decide step three - whether the opponent of the strike has proved purposeful racial discrimination. Purkett, 514 U.S. at 767. While the proponent of the strike need only state a race-neutral reason to satisfy step two of the Batson analysis, the trial court must conduct an analysis of the proffered reason for the strike to determine if the reason the prosecutor offers is merely a pretext designed to mask the improper consideration of race to exclude jurors. Johnson v. California, 545 U.S. 162, 171 (2005). In making this determination, all of the circumstances that bear upon the issue of racial animosity must be consulted. Snyder v. Louisiana, 552 U.S. 472, 478 (2008). The ultimate burden of persuasion regarding racial motivation rests with the opponent of the strike. Purkett, 514 U.S. at 768. The Batson 3-step framework applies equally to peremptory challenges by a criminal defendant. McKinney v. Artuz, 326 F.3d 87, 97-98 (2d Cir.

2003) (citing <u>Georgia v. McCollum</u>, 505 U.S. at 46). If the trial court finds that the opponent of a peremptory challenge has proven purposeful racial discrimination, the court may discharge the venire and select a new jury from a panel not previously associated with the case or disallow the discriminatory challenges and resume selection with the improperly challenged jurors reinstated on the venire. <u>Batson</u>, 476 U.S. at 99-100 n. 24 (citations omitted).

With respect to Petitioner's claim, during *voir dire*, ADA Tranquilli objected when trial counsel used his third peremptory challenge to strike a second black juror, Brian McGee. Trial counsel first argued that there was no *prima facie* showing of discrimination, which the trial court rejected. Counsel then offered various reasons for the strike, all of which were based on the fact that Mr. McGee was from the McKeesport area. The trial court sustained the prosecution's objection and disallowed the peremptory challenge and ordered that Mr. McGee be seated as a juror.

In its review of this claim, after reviewing the record in great detail, the Superior Court found as follows.

> . . . We must determine whether the trial court erred in finding that defense counsel's peremptory challenge as to a prospective juror violated the Constitution. <u>Commonwealth v. Garrett</u>, 689 A.2d 912 (Pa. Super. 1997).

>> In deciding this issue we must use a three-part analysis. First, the party objecting to the peremptory challenge must make a prima facie showing that the proponent of the peremptory challenge seeks to exclude a prospective juror based on race. Second, if a prima facie showing has been made, the burden shifts to the proponent to articulate a race-neutral explanation for excluding the juror In question. Third, if the proponent demonstrates a race neutral explanation, then the trial court must determine whether the objecting party has proved that the peremptory challenge is based on purposeful racial discrimination.

> *Id*. at 916, (citations omitted).

Because defense counsel offered an explanation for his peremptory challenge, it is unnecessary for us to determine whether the Commonwealth established a prima facie showing of discrimination. *Id*. "Once the [proponent of the challenge) has offered an explanation for the peremptory challenge and the trial court has ruled on the ultimate question of intentional discrimination, the preliminary issue of whether the [party objection] made a prima facie showing becomes moot." *Id*. (citing Hernandez v. New York, 500 U.S. 352, 111 S.Ct. at 1866 (1991)).

In regard to the second and third prongs, we must evaluate defense counsel's explanation of racial neutrality and determine whether the peremptory challenge violated the Equal Protection Clause as a matter of law. . . . After hearing defense counsel's explanation for seeking to strike Mr. McGee, the trial court found that the reasons were not race neutral and therefore, ordered that Mr. McGee be seated as a juror.

. . .

After a thorough review of the record, we find that the reasons offered by defense counsel in regard to striking Mr. McGee were facially race neutral but agree with the trial court's conclusion that defense counsel's underlying motivation was to strike this juror because of his race. We agree that the striking of an otherwise qualified African American juror on the basis that he resided in a municipality which bordered McKeesport, where the crime occurred, was not a sufficient race-neutral reason for striking this juror.

ECF No. 11-3, p.8 (some internal citations omitted).

Petitioner argues that the trial court erred in finding that that the prosecutor made a *prima facie* showing of discriminatory use of peremptory challenges by defense counsel and that the Superior Court's determination that this issue was moot (relying on Hernandez v. New York, 500 U.S. 352 (1991)) was an unreasonable application of clearly established federal law. This argument must fail.

First, the determination of whether a peremptory strike was motivated by race is ultimately a question of fact, Miller-El v. Dretke, 545 U.S. 231, 240 (2005), which is accorded a presumption of correctness under AEDPA, 28 U.S.C. § 2254(e)(1). *Id. Accord* Cole v. Roper, 623 F.3d 1183,

1188 (8th Cir. 2010).  Moreover, this Court is limited to the record that was before the state court.
Cullen v. Pinholster, ___ U.S.___, 131 S.Ct. 1388, 1398 (2011).  Petitioner has failed to show that
decision reached by the Pennsylvania courts was based on an unreasonable determination of the facts
in light of the evidence presented in the state court proceedings.  *Accord* Rice v. Collins, 546 U.S.
333, 342-42 (2006) (holding that, even if "[r]easonable minds reviewing the record might disagree"
about the finding in question, "on habeas review that does not suffice to supersede the trial court's
credibility determination"  that the challenge was not based on discriminatory intent).

Moreover, Petitioner has failed to show that the decision is contrary to, or involved an
unreasonable application of, clearly established Federal law, as determined by the Supreme Court of
the United States.  In this regard, the United States Supreme Court repeatedly has held that the right
to peremptory challenges by criminal defendants is a matter of legislative grace—not a right of
federal constitutional dimension, United States v. Martinez–Salazar, 528 U.S. 304, 311 (2000), and
one that may be withheld altogether without impairing the constitutional guarantee of an impartial
jury and a fair trial, McCollum, 505 U.S. at 57.  Thus, in Rivera v. Illinois, 556 U.S. 148, 129 S.Ct.
1446 (2009), the Supreme Court concluded that, "[b]ecause peremptory challenges are within the
States' province to grant or withhold, the mistaken denial of a state-provided peremptory challenge
does not, without more, violate the Federal Constitution."

In Rivera, the defendant challenged the trial court's rejection of his peremptory challenge to
an Hispanic juror, who wound up sitting on his trial jury.  The Supreme Court of Illinois held that the
court should have allowed the challenge but it found that the error was harmless.  Importantly, the
Supreme Court of Illinois determined that the record failed to support a *prima facie* case of

discrimination of any kind. Under these circumstances, the Court held that "the erroneous denial of a peremptory challenge" does not "require [ ] automatic reversal of a defendant's conviction as a matter of federal law." *Id*. at 1452. Instead, errors are to be assessed by inquiring whether the jury eventually empaneled was impartial, qualified, and not challengeable for cause. *Id*. at 1453.

In the case at bar, after reviewing the record, the Superior Court determined that Petitioner had shown no prejudice with respect to the denial of his counsel's preemptory challenge.

> Furthermore, we find that Hunkele suffered no prejudice by the trial court's decision to seat Mr. McGee as a juror. McGee indicated that he lived in Liberty Borough, across the river from McKeesport. Although it was later discovered that Mr. McGee's wife was the supervisor of one of the relatives of the victim, the Court and counsel made inquiry of Mr. McGee as follows:

> > THE COURT: Were you aware of that?

> > JUROR NO. 5: No, I wasn't.

> > THE COURT: Did you become aware of it?

> > JUROR NO. 5; No, I did not.

> > THE COURT: This is not even a blood relative. Do you think that that would in any way interfere with your ability to fairly judge this case?

> > JUROR NO. 5: As I said. I wasn't aware of it. I don't know anything about it. I don't know who the person is. No, I don't think it would change anything.

> Regarding whether Mr. McGee had spoken with his wife about the case, the following exchange took place.

> > MR. FARRELL: Did you talk to your wife about this case?

> > JUROR NO.5: No. I did not.

> Mr. McGee also indicated his lack of knowledge about the case.

MR. FARRELL: Have you read anything -- do you get the McKeesport papers?

JUROR No. 5: NO, I don't.

MR. FARRELL: Have you read anything or heard anything about it in any other papers?

JUROR No. 5: No.

Hunkele has made no showing that Mr. McGee was biased or incompetent in any way to serve as a juror. As Hunkele suffered no prejudice as a result of the trial court seating this juror, he is entitled to no relief on this claim.

ECF No. 11-3, pp. 9-10 (internal citations omitted).

Implicit in this holding is the Superior Court's determination that McGee was impartial, qualified, and not challengeable for cause. Thus, he has failed to show that the Superior Court's decision is contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States as set forth in Rivera v. Illinois, *supra*. As such, he has failed to show that he is entitled to habeas corpus relief as to this claim.

2.    Ineffective Assistance of Counsel

Petitioner's second and third claims allege ineffective assistance of counsel. In his second claim he argues that his trial counsel rendered ineffective assistance for failing to object to or request a curative instruction and/or a mistrial based on the prosecutor's closing argument remarks regarding a defense witness.

The Sixth Amendment right to counsel exists "in order to protect the fundamental right to a fair trial." Lockhart v. Fretwell, 506 U.S. 364, 368 (1993) (quoting Strickland v. Washington, 466 U.S. 668, 684 (1984)). *See also* Kimmelman v. Morrison, 477 U.S. 365, 374 (1986) (holding that

the essence of a claim alleging ineffective assistance is whether counsel's unprofessional errors so upset the adversarial balance between defense and prosecution that the trial was rendered unfair and the verdict rendered suspect).

The Supreme Court has formulated a two-part test for determining whether counsel rendered constitutionally ineffective assistance: 1) counsel's performance was unreasonable; and 2) counsel's unreasonable performance actually prejudiced the defense. Strickland, 466 U.S. at 687. The first prong of the Strickland test requires a defendant to establish that his attorney's representation fell below an objective standard of reasonableness by committing errors so serious that he or she was not functioning as the "counsel" guaranteed by the Sixth Amendment. Strickland, 466 U.S. at 688. The second prong requires a defendant to demonstrate that counsel's errors deprived him of a fair trial and the result was unfair or unreliable. Strickland, 466 U.S. at 689. A defendant is not entitled to relief unless he makes both showings. Id. at 687. The Strickland standard applies equally to appellate counsel. Smith v Robbins, 528 U.S. 259, 285 (2002).

In analyzing Petitioner's claims under the two-part test announced in Strickland, this Court must apply the standards set forth in section 2254(e) concerning the presumption of correctness applicable to state court factual findings. The question of effectiveness of counsel under Strickland is a mixed question of law and fact; it requires the application of a legal standard to the historical, fact determinations. Berryman, 100 F.3d 1089, 1095 (3d Cir. 1996). In this regard, a state court's finding that counsel had a trial strategy is a finding of fact to which the presumption applies. Id. Likewise, a state court's determination that a decision was a tactical one is a question of fact. Id.

Petitioner claims that his trial counsel rendered ineffective assistance by failing to object to

the prosecutor's misconduct when he argued in closing argument that Petitioner had bribed a key witness. Allegations of prosecutorial misconduct are reviewed under the standards for fundamental fairness as guaranteed under the Due Process Clause. Darden v. Wainwright, 477 U.S. 168, 181 (1986); Smith v. Phillips, 455 U.S. 209, 219 (1982). To constitute a due process violation, the prosecutorial misconduct must be " 'of sufficient significance to result in the denial of the defendant's right to a fair trial.' " United States v. Bagley, 473 U.S. 667, 676 (1985) (quoting United States v. Agurs, 427 U.S. 97, 108 (1976)). The relevant question is whether the prosecutors' comments so infected the trial with unfairness so as to make the resulting conviction a denial of due process. Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974). In making this determination, the statements or conduct at issue cannot be viewed in isolation. Rather, a court must assess the strength of the evidence against the defendant and decide whether the prosecutor's statements plausibly could have tipped the scales in favor of the prosecution. United States v. Young, 470 U.S. 1, 11 (1985). In other words, "the court must consider the probable effect the prosecutor's [statements] would have on the jury's ability to judge the evidence fairly." Id. Moreover, a prosecutor's statement regarding the credibility of a witness can constitute grounds for reversal only if the defendant can show that he was prejudiced by those comments. United States v. Swinehart, 617 F.2d 336, 339 (3d Cir. 1980). A determinative factor in this analysis is whether the prosecutor's comments suggested that he or she had knowledge of evidence other than that which was presented to the jury. Buehl v. Vaughn, 166 F.3d 163, 176 (3d Cir. 1999) (citations omitted).

In addressing this issue, the Pennsylvania Superior Court found as follows.

Appellant, in the second question raised in this appeal, contends that trial counsel was ineffective in failing to object to certain remarks made by the prosecutor

in his closing argument. According to appellant, the remarks of the prosecutor "inferred to the jury that defense witness Colleen Kleist [appellant's ex-girlfriend] and appellant likely bribed defense witness Marcus Lewis [also known as "Mumbles"] to give perjured testimony.

The legal principles that guide our review of this claim are well settled. In reviewing a claim of improper prosecutorial comments, our scope of review is whether the trial court abused its discretion. Comments by a prosecutor do not constitute reversible error unless the unavoidable effect of such comments would be to prejudice the jury, forming in their minds fixed bias and hostility toward the defendant so that they could not weigh the evidence objectively and render a true verdict. Furthermore, a prosecutor must have reasonable latitude in fairly presenting a case to the jury and must be free to present his or her arguments with logical force and vigor. The prosecutor is also permitted to respond to defense arguments. Finally, in order to evaluate whether the comments were improper, we do not look at the comments in a vacuum; rather we must look at the comments in the context in which they were made.

The remarks of the prosecutor at issue were as follows:

Ladies and gentlemen, there is no conspiracy here between any Benjamin Smith family and Joe Gonzales family. Did you hear any evidence that any money changed hands in this case? Absolutely not.

But I'll tell you what. You want to talk about money, ladies and gentlemen – and I'm not saying Mr. Farrell would ever engage in that kind of activity, because I know him, and I know he would not do that.

But do you think possibly just maybe Colleen Kleist or Ernie Hunkele might engage in that kind of activity and offer money to a guy named Mumbles [to come out here and kill two Commonwealth witnesses, two birds, if you will, with one stone?]

Having carefully considered appellant's argument we conclude that it fails to provide a basis for PCRA relief. Here, appellant's trial counsel made a point of questioning Commonwealth witness Benjamin Smith on cross examination if he or anyone in his family had received money in exchange for his trial testimony, to which Smith replied: "No, sir." Trial counsel also raised the issue during his redirect examination testimony of defense witness Marcus ("Mumbles") Lewis:

COUNSEL FOR APPELLANT: Now, were you offered any money by the following persons: [the Defendant], me, an employee

of mine, the Public Defender's Office, guards, police, anybody you had got in contact with from the time you were at SCI Greene to the time you came down here?

[MARCUS LEWIS]: No, sir.

Thereafter, the prosecutor asked Lewis on re-cross examination if he had received any money from Colleen Kleist, and he responded "no."

Trial counsel in his closing argument argued to the jury:

They [Smith and his mother] wanted a deal from the DA. Because I can't give them a deal. I can't give him a deal. And I'm certainly not going to give anybody any money. Nobody at any time will get money from me about anything.

Viewed in context of the testimony and trial counsel's closing argument, we conclude that the argument of the prosecutor was a fair response to trial counsel's suggestion that Smith might have received something in exchange for his testimony. The prosecutor was attempting to uphold the credibility of Smith in light [of] the defense's argument. As the trial judge explained:

This statement of the Commonwealth was made in response to defense counsel's introduction and intimation concerning the Commonwealth witnesses receiving compensation or favorable treatment for their testimony. Accordingly, the assistant district attorney acted properly in responding to this issue.

We agree with this analysis. Moreover, appellant has failed to demonstrate the element of prejudice. Even If the underlying claim had been meritorious, and assuming that counsel had no reasonable basis for not objecting, appellant has not shown, and the record does not indicate, a reasonable probability that the outcome of the proceedings would have been different had trial counsel interposed an objection. Accordingly, appellant's ineffectiveness claim based upon the closing statements of the prosecutor fails.

ECF No. 11-8, pp 11-14 (internal quotations and citations omitted).

The Supreme Court has recognized that the mere failure to file a trial motion does not constitute *per se* ineffective representation. Kimmelman v. Morrison, 477 U.S. 365 (1986). Rather,

to demonstrate actual prejudice under the second prong of the <u>Strickland</u> test, a petitioner must prove that the claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence. *Id*. at 375. As Respondent points out in the instant case, the prosecutor's argument was properly grounded in the trial evidence and was a fair response to the defense's argument. Therefore, Petitioner has not shown the first requirement, *i.e.*, that any objection from trial counsel would have been sustained. Nor has he shown that he would have received any curative instructions his counsel may have asked for. More importantly, he has failed to cite to any authority to show that the Superior Court's ruling is contrary to, or an unreasonable application of, clearly established federal law. As such, he has failed to show that he is entitled to relief with respect to his second claim.

In his third claim, Petitioner argues that the trial court violated his constitutional rights when it allowed non-expert law enforcement testimony in contradiction to its pre-trial ruling and appellate counsel was ineffective for failing to raise this issue on direct appeal. With respect to this claim, the Superior Court held as follows.

> Next , appellant complains that trial counsel was ineffective when he elicited previously barred evidence, and direct appellate counsel was ineffective for failing to raise the trial court's error in permitting the evidence. Specifically, appellant contends that trial counsel was ineffective in eliciting testimony from Commonwealth's witness Detective Korczyk, that more than one person was involved in the homicide/robbery. According to appellant, this testimony was presented to the jury in contravention of a pretrial order that barred such evidence. The exchange at issue occurred as follows:

> > [COUNSEL FOR APPELLANT]: What physical evidence at the bar did you or your detectives find that connected Mr. Hunkele?

[DETECTIVE KORCZYK]: I would say, based upon the scene, it was apparent that there was more than one person involved in the shooting and that, in fact –

> [COUNSEL FOR APPELLANT]: Your Honor, I would ask for the detective to answer the question. I ask that his answer be stricken. He's not answering the question. My question was very simple, what physical evidence was found at the scene to connect my client.

> [COMMONWEALTH COUNSEL]: Judge, I would object at the point. The detective was asked, and he answered the question.

> The Court: Sustained.

[COUNSEL FOR APPELLANT]: There was no physical evidence found at the scene, no blood of my client; is that correct?

[DETECTIVE KORCZYK]: There was no blood of your client, that's correct.

[COUNSEL FOR APPELLANT]: There [were] no fingerprints of my client?

[DETECTIVE KORCZYK]: That's correct.

[COUNSEL FOR APPELLANT]: But there is blood of at least three people found at the scene?

[DETECTIVE KORCZYK]: Yes.

As the above excerpt reveals, trial counsel's question, though broadly stated, was not addressed to the issue of the number of people involved in the crime. Furthermore, trial counsel immediately interrupted the detective's answer and precluded further, more detailed, information from being revealed. Finally, trial counsel had an obvious, reasonable strategy in pursuing this line of questioning, which was to show that there was no evidence of appellant at the scene, while there was ample evidence of others. Consequently, there is no basis for appellant to argue that trial counsel was ineffective in questioning Detective Korczyk or that appellate counsel was ineffective in failing to challenge the ruling on direct appeal.

ECF No. 11-8, pp. 15-17.

Recently, the Supreme Court reiterated the difficulty in showing ineffective assistance of

counsel and the deference that must be accorded to state court determinations.

> Surmounting <u>Strickland</u>'s high bar is never an easy task. An ineffective-
> assistance claim can function as a way to escape rules of waiver and forfeiture and
> raise issues not presented at trial or in pretrial proceedings, and so the Strickland
> standard must be applied with scrupulous care, lest intrusive post-trial inquiry
> threaten the integrity of the very adversary process the right to counsel is meant to
> serve.. Even under de novo review, the standard for judging counsel's representation
> is a most deferential one. Unlike a later reviewing court, the attorney observed the
> relevant proceedings, knew of materials outside the record, and interacted with the
> client, with opposing counsel, and with the judge. It is all too tempting to second-
> guess counsel's assistance after conviction or adverse sentence. The question is
> whether an attorney's representation amounted to incompetence under prevailing
> professional norms, not whether it deviated from best practices or most common
> custom.

> Establishing that a state court's application of <u>Strickland</u> was unreasonable
> under § 2254(d) is all the more difficult. The standards created by Strickland and §
> 2254(d) are both highly deferential and when the two apply in tandem, review is
> doubly so. The <u>Strickland</u> standard is a general one, so the range of reasonable
> applications is substantial. Federal habeas courts must guard against the danger of
> equating unreasonableness under <u>Strickland</u> with unreasonableness under § 2254(d).
> When § 2254(d) applies, the question is not whether counsel's actions were
> reasonable. The question is whether there is any reasonable argument that counsel
> satisfied <u>Strickland</u> 's deferential standard.

Premo v. Moore, ___ U.S. ___, 131 S.Ct. 733, 739-740 (2011) (internal quotations and citations

omitted).

Here, the Superior Court determined that trial counsel had a reasonable strategy in pursuing

this line of questioning, which was to show that there was no evidence of appellant at the scene while

there was ample evidence of others. Where the Commonwealth can show that counsel actually

pursued an informed strategy, the presumption that the attorney's decision was objectively

unreasonable becomes virtually unchallengeable. <u>Thomas v. Varner</u>, 428 F.3d 491, 500 (3d Cir. 2005), *cert. denied*, <u>Palakovich v. Thomas</u>, 549 U.S. 1110 (2007). Here, Petitioner has not made any showing to rebut the presumption that his counsel's trial strategy was objectively reasonable. Failure to make the required showing of deficient performance defeats his ineffectiveness claim and the Court need not determine prejudice. <u>Strickland</u>, 466 U.S. at 700. Accordingly, Petitioner is not entitled to relief as to his third claim.

### C. Certificate of Appealability

Section 2253 generally governs appeals from district court orders regarding habeas petitions. Section 2253(c)(1)(A) provides that an appeal may not be taken from a final order in a habeas proceeding in which the detention arises out of process issued by a State court unless a certificate of appealability has been issued. A certificate of appealability should be issued only when a petitioner has made a substantial showing of a denial of a constitutional right. 28 U.S.C. 2254(c)(2). Here, the record fails to show a violation of Petitioner's constitutional rights. Accordingly, a certificate of appealability should be denied.

## III.   <u>CONCLUSION</u>

Based on the discussion above, it is respectfully recommended that the Petition for Writ of Habeas Corpus be denied and that a certificate of appealability be denied.

In accordance with the applicable provisions of the Magistrate Judges Act [28 U.S.C. ' 636(b)(1)(B) & (C)] and the Local Rules of Court, the parties shall have fourteen days from the date of the service of this report and recommendation to file written objections thereto. Any party opposing such objections shall have fourteen days from the date on which the objections are served

to file its response.  A party's failure to file timely objections will constitute a waiver of that party's

appellate rights.

/s Cynthia Reed Eddy

Cynthia Reed Eddy

United States Magistrate Judge

January 25, 2012

Ernest Hunkele
EL-6182
SCI Mahanoy
301 Morea Road
Frackville, PA 17932